IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| KEVIN WILSON, | ) |
| | ) Civil Action No.: |
| | ) 3:24-CV-00183-CBB |
| Plaintiff, | ) |
| | ) Christopher B. Brown |
| vs. | ) United States Magistrate Judge |
| | ) |
| C.O. GALLAHER, PAUL ENGLISH, | ) |
| RONALD MOONEY, DR. LAUREL R. | ) |
| HARRY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION[1]**
**ON MOTION TO DISMISS ECF No. 29**

**Christopher B. Brown, United States Magistrate Judge**

**I.  Introduction**

This civil rights action was initiated by pro se Plaintiff Kevin Wilson ("Wilson") who is currently an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Houtzdale ("SCI-Houtzdale").  Wilson alleges Defendants[2], who are Corrections Officials at SCI-Houtzdale, violated his civil rights when they allegedly retaliated

---

[1]     All parties have consented to full jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2]     Defendants include Gallaher, a security officer at SCI-Houtzdale ("Officer Gallaher"), Ronald Mooney, the intelligence captain at SCI-Houtzdale ("Cpt. Mooney"), Paul English, a security lieutenant at SCI-Houtzdale ("Lt. English"), and Dr. Laurel R. Harry, the secretary of the DOC ("Sec. Harry") (collectively "Corrections Defendants").

1

against him for filing a separate civil rights lawsuit related to different DOC corrections officials. *See* ECF No. 15.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Presently pending before the Court is Corrections Defendants' partial motion to dismiss Wilson's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 29. The motion is fully briefed and ripe for consideration. ECF Nos. 30, 36.

For the reasons that follow, Corrections Defendants' motion to dismiss is granted in part and denied in part.

## II. Background

Wilson claims two inmates physically assaulted him in February 2018 while he was in custody at SCI-Dallas. ECF No. 15 at ¶ 11. Thereafter, he filed a civil rights action in the United States District Court for the Middle District of Pennsylvania against two corrections officers on Eighth Amendment claims related to the failure to protect him during the assault and a subsequent denial of medical care. *Id*. at ¶ 12; *Wilson v. Mahally*, 3:18-cv-1637-RDM (M.D.Pa. 2018). The case was scheduled for a jury trial to begin on December 11, 2023. *Wilson v. Mahally*, 3:18-cv-1637-RDM (M.D.Pa.) (ECF Nos. 113, 114, 123).

While the parties were conducting discovery in that action, Wilson was given a copy of the investigation report of the assault but misplaced it and requested a copy of the report from a DOC administrator. *Id*. at ¶¶13-18. The DOC administrator sent Wilson's request to Lt. English on or about November 16, 2023.

2

*Id.* at ¶ 18. Wilson alleges within a day of receiving this request, Lt. English and Cpt. Mooney fabricated a report that Wilson possessed contraband. *Id.* at ¶ 19. He further alleges that Lt. English directed Officer Gallaher and another unnamed officer to search Wilson's cell and destroy his trial exhibits and legal paperwork in an apparent effort to intimidate Wilson from proceeding with his pending civil rights trial. *Id.*

Consistent with Lt. English's directives, Officer Gallaher and another unnamed officer conducted cell searches the next day on Wilson's prison block and searched Wilson's cell. *Id.* at ¶¶ 20-31. During the search, Officer Gallaher asked Wilson why he was suing the two officers and why Wilson wrote to the DOC administrator requesting investigation reports. *Id.* at ¶ 31. Wilson responded to Officer Gallaher that his "lawsuit was none of his busine[ss]." *Id.* Officer Gallaher then became upset and responded "okay . . . you can't go to trial without your legal papers." *Id.* He also told Wilson that he was going to "max out [his] sentence if [he went] through with the trial," as he sorted through Wilson's trial exhibits, read them, and asked questions about where he obtained them. *Id.* at ¶¶ 36-38. Officer Gallaher then ripped up Wilson's legal work and trial exhibits and flushed them down the toilet. *Id.* at ¶ 40. After destroying them, Officer Gallaher smacked Wilson's television from the stand, which was damaged, but still works. *Id.* at ¶¶ 42-43. After the search ended, Wilson requested a plunger to unclog his toilet from Officer Gallaher flushing his legal documents and later filed a grievance concerning this incident. *Id.* at ¶¶ 46-47.

Wilson unsuccessfully attempted to obtain new copies of his trial exhibits, and claims his grievance was rejected without investigation. *Id.* at ¶¶ 53-61. He also alleges that Cpt. Mooney erased camera footage of the cell search. *Id.* at ¶ 74. As a consequence of his trial exhibits and other legal work product being destroyed, Wilson claims he did not have the tools he needed to present his viable claims at trial and caused him to lose. *Id.* at ¶¶ 71-72.

According to Wilson, the conduct by Officer Gallaher, Cpt. Mooney and Lt. English was part of a pattern of retaliatory searches which occurred due to Sec. Harry's policy to allow security office staff members to investigate their own misconduct, give the security office staff members discretion to erase incriminating video footage and discretion whether to interview inmates. *Id.* at ¶ 75. The policy also results in the security office not being disciplined for retaliatory searches. *Id.* In the end, Wilson claims this all caused him to become suicidal and resulted in his being on suicide watch. *Id.* at ¶¶ 66-70

Based on this, Wilson asserts the following claims:

(1) A First Amendment retaliation and related conspiracy claims under 42 U.S.C. § 1983 against Officer Gallaher, Cpt. Mooney and Lt. English (Count I);

(2) A First Amendment access to courts claims under 42 U.S.C. § 1983 against Officer Gallaher, Cpt. Mooney and Lt. English (Count II);

(3) A "state law tort claim" for destroying Wilson's personal property against Officer Gallaher, Cpt. Mooney and Lt. English which the Court will

construe as a claim for conversion under Pennsylvania law, ECF No. 15 at ¶ 80 (Count III);

(4) A "municipal liability" claim for maintaining a policy of "biased investigations" against Sec. Harry, *id.* at ¶ 84 (Count IV);

(5) A "cruel and unusual punishment" claim for destroying his personal property which the Court will construe as asserted against Officer Gallaher, Cpt. Mooney and Lt. English, *id.* at ¶ 85 (Count V);

(6) A Fourteenth Amendment equal protection claim for treating Wilson "differently from other inmates who were similarly situated" under 42 U.S.C. § 1983 against all Defendants, *id.* at ¶ 86 (Count VI).

Corrections Defendants move to dismiss four of Wilson's six claims: (1) the First Amendment access to courts claim (Count II); (2) the "municipal liability" claim (Count IV); (3) the "cruel and unusual punishment" claim (Count V); and (4) the Fourteenth Amendment equal protection claim (Count VI). ECF No. 29. Corrections Defendants do not move to dismiss Wilson's claims for First Amendment retaliation (Count I) or his state law conversion claim (Count III). *Id.*

### III. Standard of Review – Fed. R. Civ. P. 12(b)(6)

The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief;" Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant bears the burden of showing a plaintiff's complaint fails to state a claim.

*See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

In deciding a motion to dismiss, a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record and any document "integral to or explicitly relied upon in [framing] the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up). If a court considers other

6

matters outside of this list, the motion must be converted to a motion for summary judgment after giving the parties a reasonable opportunity to present all material discovery relevant to a summary judgment motion before the Court's decision. Fed. R. Civ. P. 12(d).

Finally, because Wilson is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If the Court can reasonably read Gregory's complaint to state a claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982). Despite this leniency, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

IV. **Discussion**

    a. **Municipal Liability and "Cruel and Unusual Punishment" Claims (Counts IV and V)**

Although out of order, the Court will first address Counts IV and V as Wilson does not oppose their dismissal.

In the Amended Complaint, Wilson asserts a § 1983 municipal liability claim against Sec. Harry for maintaining a policy of "biased investigations" (Count IV) and a "cruel and unusual punishment" claim against Officer Gallaher, Cpt. Mooney and Lt. English for destroying his personal property (Count V). ECF No. 15 at ¶¶

84-85. Corrections Defendants move to dismiss these claims on the grounds that the DOC is not a municipality subject to § 1983 liability under the *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) standard, and because there is no recognized Eighth Amendment cruel and unusual punishment claim for a deprivation of property. *See* ECF No. 30 at 3-5. Corrections Defendants further maintain that to the extent Wilson attempts to assert a Fourteenth Amendment due process claim for the destruction of his property, he had an adequate post-deprivation remedy for the loss. *Id.* at 5-6.

As Wilson does not "object to" or "oppose" dismissal of his "municipal liability" claim or his "property claim," ECF No. 36 at 1, Counts IV and V are dismissed as unopposed with prejudice. The Court will now turn to Corrections Defendants remaining arguments.

### b. Equal Protection (Count VI)

Wilson asserts an equal protection "class of one" claim against the Corrections Defendants for treating him "differently from other inmates[] who were similarly situated" and did so "intentionally and without rational basis." ECF No. 15 at ¶ 86.

Corrections Defendants argue Wilson's equal protection claim should be dismissed "because he has not included any allegations of unlawful differential treatment." ECF No. 30 at 7.

In his response, Wilson explains he was treated differently from other inmates who were randomly searched the same night he was because he submitted

a "request slip and lawsuit." ECF No. 36 at 1. In other words, Wilson alleges he was treated differently from other prisoners whose cells were searched that same day because, unlike those prisoners who had no pending litigation against DOC officials, his personal property was intentionally destroyed and there was no rational basis for the difference in treatment.

The Equal Protection Clause of the Fourteenth Amendment provides a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. When a plaintiff asserts a "class of one" equal protection challenge "alleging that the litigant [himself], and not a particular group, was the subject of discriminatory treatment under a particular law, we have required the litigant to allege that [he] has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013) (cleaned up).

A "pure or generic retaliation [] claim simply does not implicate the Equal Protection Clause." *Thomas v. Indep. Twp.*, 463 F.3d 285, 298 n. 6 (3d Cir. 2006) (cleaned up). When a plaintiff alleges defendants enforce the law selectively against them in retaliation for exercising constitutional rights, the proper cause of action is under the First Amendment for retaliation, and not for an equal protection class of one theory under the Fourteenth Amendment. *Id. See also Wardlaw v. City of Philadelphia*, No. CIV. 09-3981, 2011 WL 1044936, at *6 (E.D. Pa. Mar. 21, 2011) (dismissing equal protection claim based on allegation of retaliation); *Stubbs v. Nutter*, No. CIV.A10-3200, 2010 WL 3421015, at *3 (E.D. Pa. Aug. 30, 2010) (same);

9

*O'Fee v. City of Philadelphia*, No. CIV.A. 09-2724, 2009 WL 3172759, at *4 (E.D. Pa. Oct. 2, 2009) (same). Wilson's assertion that Corrections Defendants treated him differently from other inmates by destroying his legal materials in retaliation for pursuing his civil rights through a lawsuit is essentially a recasting of his retaliation claim as one for equal protection.

Accordingly, Corrections Defendants motion to dismiss Wilson's equal protection claim is granted and this claim is dismissed with prejudice as amendment would be futile. *Phillips*, 515 F.3d at 236.

### c. Access to Courts (Count II)

Wilson claims Officer Gallaher, Cpt. Mooney and Lt. English violated his right of access to the courts when they destroyed his trial exhibits and other legal materials and this caused him to lose his civil rights trial because he could not ask the defendants and witnesses questions he prepared, could not present his original opening and closing statements, and was not given access to his trial exhibits until the day of the trial. ECF No. 15 at ¶¶ 77-79.

Corrections Defendants argue Wilson's access to courts claim should be dismissed because he has not alleged the "actual injury" or "prejudice" elements required to state such a claim. ECF No. 30 at 8-12. Corrections Defendants argue Wilson was provided with copies of his exhibits at trial after he informed the trial judge and counsel of their destruction, but he did not make "any mention of the purported loss of his opening and closing statements or his list of questions for examination of witnesses" to the trial judge. *Id*. at 11. Corrections Defendants

maintain Wilson had the opportunity to pursue his claims through trial and has not explained how he was prejudiced by the unavailability of his legal materials. *Id*. at 12.

Prisoners maintain a constitutional right of access to the courts under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). When a prisoner alleges corrections officials have "inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). To state such a claim, the prisoner's complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe*, 536 F.3d at 205–06 (quoting *Christopher*, 536 U.S. at 416–17).

"The right to meaningfully access the courts includes a right to the tools needed in order to challenge the conditions of confinement." *Rivera v. Monko*, 37 F.4th 909, 918 (3d Cir. 2022) (cleaned up) (finding a prisoner's inability to access the Federal Rules of Civil Procedure and Federal Rules of Evidence during a jury trial plausibly stated an access-to-courts claim). This right of access does not stop once a complaint challenging conditions of confinement has been filed, and "a prisoner has a valid access-to-courts claim when he alleges that the denial of access to legal materials—before and/or during trial—caused a potentially meritorious

claim to fail." *Id.* at 915; 922. "Indeed, it would be perverse if the right to access courts faded away after a prisoner successfully got into court by filing a complaint or petition. Once in court, a prisoner's need to access legal materials is just as great—if not greater—than when a prisoner initially filed a complaint." *Id.* at 922–23. Thus, just because Wilson was able to file his complaint challenging his conditions of confinement does not automatically establish, as Corrections Defendants suggest, that Wilson had meaningful access to the courts. *See Rivera*, 37 F.4th at 915 ("it is ludicrous to hold that the right of access stops once the complaint has been filed."). Similarly, Corrections Defendants have cited no legal authority for the proposition that Wilson's failure to raise the issue of his destroyed legal notes and other work product with the trial court forecloses his access to courts claim as a matter of law.

Accordingly, Wilson has adequately stated an access to courts claim. He alleges the legal materials he prepared, which included his trial exhibits, questions for examining witnesses and his opening and closing statements, were intentionally destroyed less than a month before trial and he was unable to receive a copy of the trial exhibits until the day the trial started. ECF No. 36 at 2. He claims the intentional destruction of his legal materials inhibited his ability to prepare for and prosecute his civil rights claims and caused him to lose at trial. *Id.* At this stage, it can reasonably be inferred that Wilson was prejudiced from the destruction of his legal materials because he was not able to effectively present testimony or elicit testimony from witnesses and access to those materials would have changed the

12

outcome of his trial. *See e.g.*, *Rivera*, 37 F.4th at 915 ("We know of very few lawyers who could litigate [a conditions of confinement] action without being able to refer to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. A *pro se* prisoner is much less likely to be able to do so.").

Accordingly, Corrections Defendants' motion to dismiss is denied in this respect.

### d. Personal Involvement and Supervisor Liability of Sec. Harry

Lastly, Corrections Defendants argue Wilson has failed to adequately allege the personal involvement of Sec. Harry or any predicate supervisory liability against him and therefore the claims against him must be dismissed. Because the only claims Wilson asserts against Sec. Harry have been voluntarily dismissed (municipal liability claim at Count IV), or have failed to state a claim and dismissed with prejudice (equal protection claim at Count VI), this argument will not be addressed and Sec. Harry is dismissed from this action.

### V. Conclusion

Based on the above, Corrections Defendants' motion to dismiss is granted in part and denied in part. Corrections Defendants' motion is granted with respect to Wilson's municipal liability claim (Count IV), "cruel and unusual punishment" claim (Count V), and equal protection claim (Count VI) which are dismissed with prejudice. No claims remain against Sec. Harry, therefore he is dismissed from this action. Corrections Defendants' motion is denied in all other respects. The following claims remain against Officer Gallaher, Cpt. Mooney and Lt. English only:

(1) A First Amendment retaliation and related conspiracy claims under 42 U.S.C. § 1983 (Count I);

(2) A First Amendment access to courts claims under 42 U.S.C. § 1983 (Count II); and

(3) A conversion claim under Pennsylvania law for destroying Wilson's personal property (Count III).

An appropriate Order follows.

DATED this 25th day of November, 2025.

                    BY THE COURT:

                    s/Christopher B. Brown
                    United States Magistrate Judge

cc:    KEVIN WILSON
       KU3715
       SCI HOUTZDALE
       P.O. Box 1000
       209 Institution Drive
       Houtzdale, PA 16698-1000

       Counsel of record via CM/ECF electronic filing